UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRICE MARIO BULLITT,

        Petitioner,

                                    Case No. 1:10-cv-921
v.                                      Hon. Robert J. Jonker

CARMEN PALMER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Tyrice Mario Bullitt, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

The trial court provided a factual summary of Bullitt's criminal activity as follows:

The record reflects that defendant, armed with a gun and a knife, broke into the condominium shared by Sheribia Rogers and her 15-year-old daughter, Kyishia Rogers. Defendant demanded that Sheribia and Kyishia give him their money, directed them to undress, handcuffed Sheribia, and repeatedly threatened to kill Sheribia and Kyishia, all the while pointing his gun or knife at them. During the incident, defendant hit both Sheribia and Kyishia in the head with his gun.

Further, defendant pointed his gun and knife at both throughout the encounter and repeatedly told them that he was going to kill them. Defendant also attacked a third victim, Ruth McLean by standing in front of her van, pointing his gun directly at her face, telling her he was going to kill her and then pulling the trigger of the gun which did not fire. He then reloaded the gun and fired two shots in her direction, both of which shattered McLean's windshield and one of which hit McLean in the face.

*People v. Bullitt*, No. 06-010970-01 (3rd Cir. Ct. Mich.) (Opinion and Order denying defendant's motion for relief from judgment) (June 22, 2009) (docket no. 5-3).

Following a bench trial, petitioner was convicted of three counts of assault with intent to murder, M.C.L. § 750.83, two counts of armed robbery, M.C.L. § 750.529, one count of first-degree home invasion, M.C.L. § 750.110a(2), two counts of felonious assault, M.C.L. § 750.82, and one count of possession of a firearm during the commission of a felony (felony-firearm), M.C.L. § 750.227b. *People v. Bullitt*, No. 276426, slip op. at p. 1 (Mich. App. March 18, 2008) (docket no. 17).[1] Petitioner was sentenced to life imprisonment for the assault with intent to murder convictions, 5 to 10 years imprisonment for the armed robbery convictions, 2 to 20 years imprisonment for the first-degree home invasion conviction, one to four years imprisonment for the felonious assault convictions, and two years imprisonment for the felony-firearm conviction. *Id.* The sentences for the assault with intent to murder, armed robbery, home invasion and felonious assault were concurrent with each other and consecutive to the felony-firearm sentence. Sent. Trans. at pp. 18-19 (docket no. 16); Judgment of Sentence (consisting of two pages) (Feb. 1, 2001) (docket no. 17).

Petitioner, through counsel, appealed his convictions to the Michigan Court of Appeals raising two issues:

I.      Should [petitioner's] assault with intent to murder convictions be reversed because the trial evidence presented failed to prove his guilt beyond a reasonable doubt?

II.      Should [petitioner] be resentenced because the lower court record failed to establish substantial and compelling reasons for the departure above the sentencing guidelines for the assault with intent to murder counts?

Brief (docket no. 17).

---

[1] In its decision, the Court dismissed Counts 7 and 8, which charged assault with intent to commit sexual penetration, finding that petitioner "never did anything that would indicate to this Court that he was going to commit criminal sexual penetration," and that "[t]he Court does have some reasonable doubt he was actually going to commit a criminal sexual penetration." *See* Trial Trans. II at pp. 100-02 (docket no. 15).

The Michigan Court of Appeals affirmed petitioner's convictions, but remanded for clarification of his armed robbery sentences. *Bullitt*, No. 276426, slip op. at p. 5. Petitioner raised the same issues in his pro se application for leave to appeal to the Michigan Supreme Court, which that court denied because it was not persuaded that the questions presented should be reviewed. *People v. Bullitt*, No. 136281 (Mich. July 23, 2008) (docket no. 18).

On September 11, 2008, Bullitt filed a motion for relief from judgment pursuant to MCR 6.500 *et seq. See People v. Bullitt*, No. 06-010970-01 (Register of Actions) (docket no. 11). Bullitt stated that he raised the following issues in this motion:

I. Whether the Sixth Amendment is violated by imposition of an enhanced sentence under the Michigan Sentencing Guidelines based on the sentencing judge's determination of fact (other than a prior conviction) that was not found by the jury or admitted by the defendant.

 (A). Was [petitioner] sentenced within a range that was determined by facts neither admitted nor found by a jury beyond a reasonable doubt.

II. Ineffective assistance of trial counsel for failing to object at sentencing to upward departure and the defendant being sentenced within a range that was determined by facts neither admitted nor found by a jury beyond a reasonable doubt.

III. Ineffective assistance of appellate counsel for failing to raise meritorious issues on direct appeal.

Attachment to Amended Petition at pp. 17-18 (docket no. 5).

The trial judge denied the motion. First, the judge found that petitioner raised the sentencing issue in his direct appeal:

Defendant argues that his sentence represents an erroneous upward departure from the applicable guidelines because the Court considered facts other than prior convictions which were not submitted to a jury. He also argues that appellate counsel was ineffective for failing to raising [sic] these claims on appeal. In his

appeal of right defendant contended that the trial court abused its discretion in deviating from the sentencing guidelines. Though artfully reworded, this is same issue he now raises.

*      *      *

The trial court stated only facts which were presented during trial to support his upward departure. Because this ground for relief was decided against the defendant in a prior appeal, this Court may not grant relief to the defendant. MCR 6.508 (D) (2).

*People v. Bullitt*, Opinion and Order at p. 3 (docket no. 5-3) (footnote omitted).[2] Second, the judge

found no ineffective assistance of counsel:

Furthermore, to demonstrate that appellate counsel was ineffective for failing to raise an issue on appeal, a defendant must overcome the presumption that the failure to raise an issue was sound appellate strategy and must establish that the deficiency was prejudicial. <u>People v Reed</u>, 198 Mich App 639. 646-647: 499 NW2d 441 (1993), affd 449 Mich 375: 535 NW2d 496 (1995). However, because the issue of upward departure from the sentencing guidelines was raised in defendant's appeal of right, the claim of ineffective assistance of appellate counsel is erroneous.

*Id.*

Petitioner filed a *pro se* delayed application for leave to appeal this order to the

Michigan Court of Appeals raising the same issues. Delayed Application for leave to appeal (docket

no. 19). The Michigan Court of Appeals denied the delayed application because petitioner "failed

to meet the burden of establishing entitled to relief under MCR 6.508(D)." *People v. Bullitt*, No.

293689 (Mich. App. Nov. 23, 2009) (docket no. 19). Petitioner raised the same issues in his

application for leave to appeal to the Michigan Supreme Court, which that court denied because

---

[2] MCR 6.508(D)(2) provides in pertinent part that:

"The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion . . . (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision[.]"

petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

*People v. Bullitt*, No. 140287 (Mich. June 28, 2010) (docket no. 20).

Bullitt raised the following issues in his amended petition for federal habeas relief

under 28 U.S.C. § 2254 (in his words):

I. Should [petitioner's] assault with intent to murder convictions be reversed because the trial evidence presented failed to prove his guilt beyond a reasonable doubt?

II. Should [petitioner] be resentenced because the lower court record failed to establish substantial and compelling reasons for departure above the sentencing guidelines for the assault with intent to murder counts?

III. Whether the Sixth Amendment is violated by imposition of an enhanced sentence under the Michigan sentencing guidelines based on the sentencing judges determination of a fact (other than a prior conviction) that was not found by the jury or admitted by [petitioner]?

    A. Was [petitioner] sentenced within a range that was determined by facts neither admitted nor found by a jury beyond a reasonable doubt?

IV. Ineffective assistance of trial counsel for failing to object at sentencing to upward departure and [petitioner] being sentenced within a range that was determined by facts neither admitted nor found by a jury beyond a reasonable doubt?

V. Ineffective assistance of appellate counsel for failing to raise meritorious issues on direct appeal?

Amend. Pet. at pp. 5-10 (docket no. 5); Attachment (docket no. 5 at p. 24).

## II. Procedural default

Petitioner's Issues III, III.A. and IV are subject to the procedural default doctrine

because they were first raised in his post-appeal motion for relief from judgment, and then denied

as procedurally barred by MCR 6.508(D)(2). *See* Opinion and Order. Where "a state prisoner has

defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Respondent neither identified nor discussed petitioner's procedural defaults.

This Court can raise a procedural default sua sponte. *See Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("even if the State does waive a procedural default defense, we may raise it sua sponte") (internal quotation marks omitted). However, federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (the court may proceed to decide the merits of a procedurally defaulted habeas claim where "the question of procedural default presents a complicated question of Michigan law and is unnecessary to [the] disposition of the case"). Judicial economy might counsel addressing the merits of a procedurally defaulted claim "if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). *See also, Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) ("[w]e cut to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case"). Given the nature of Issues III, III.A. and IV, it would be easier to resolve these issues on the merits rather than address a cumbersome procedural default analysis sua sponte.

### III.    Standard of review under 28 U.S.C. § 2254

Where the state court has adjudicated a claim on its merits, the federal district court's

habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings,

and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S.

776, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted). "Under the

'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a

conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court

decided the case differently than the Supreme Court has on a set of materially indistinguishable

facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ

only if the state court identified the correct governing legal principle from the Supreme Court's

decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court

may not issue a writ of habeas corpus "simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously

or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### A.    Sufficiency of the evidence (Issue I)

Petitioner contends that his three convictions for assault with intent to murder are not supported by sufficient evidence, because the prosecutor failed to establish any of the elements of that crime. First, petitioner did not commit an assault because he "never touched either Sheribia or Kyishia with intent to kill." Attachment (docket no. 5-3 at p. 32). Second, he did not have the intent to murder, because "just threatening to kill does not constitute specific intent." *Id.* Third, a successful assault would not have made the killing murder, because according to petitioner, he "made no effort or move to harm either complainant." *Id.*

The Michigan Court of Appeals addressed this claim as follows:

Defendant first contends that there was insufficient evidence to convict him of three counts of assault with intent to murder. We disagree.

When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v. Mayhew*, 236 Mich.App 112, 124; 600 NW2d 370 (1999). This Court reviews the evidence in the light most favorable to the prosecutor and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v. Brown*, 267 Mich.App 141, 147; 703 NW2d 230 (2005). An assault arises from either an attempted battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery. *People v. Nickens*, 470 Mich. 622, 628; 685 NW2d 657 (2004). A battery is an intentional, unconsented to and harmful or offensive touching of the person of another, or of something closely connected with the person. *Id.* The intent to kill may be proven by inference from any facts in evidence. *People v. McRunels*, 237 Mich.App 168, 181; 603 NW2d 95 (1999). In light of the difficulty in proving an actor's state of mind, minimal circumstantial evidence of intent is sufficient. *Id.*

The record reflects that defendant, armed with a gun and a knife, broke into the condominium shared by Sheribia Rogers and her 15-year-old daughter, Kyishia Rogers. Defendant demanded that Sheribia and Kyishia give him their money, directed them to undress, handcuffed Sheribia, and repeatedly threatened to kill Sheribia and Kyishia, all the while pointing his gun or knife at them. On these facts, there is ample evidence that defendant committed multiple assaults upon both women. During the incident, defendant hit both Sheribia and Kyishia in the head with his gun. Further, defendant pointed his gun and knife at both throughout the encounter and repeatedly told them that he was going to kill them. Apart from physically striking them, defendant's threats constitute additional assaults because they placed Sheribia and Kyishia in reasonable apprehension of receiving an immediate battery. *Nickens*, *supra* at 628. Additionally, defendant went to considerable lengths to chase both Sheribia and Kyishia when they ran away from him.

Concerning the intent element, the facts support a finding that soon upon entering the condominium, defendant possessed an intent to kill Sheribia and Kyishia. Defendant's intent was manifested time and time again when he repeatedly told Sheribia and Kyishia that he would kill them and they were going to die that night. Defendant's threats were explicit and unambiguous. Further supporting his threats was the fact that defendant was armed with a gun and a knife and had struck Sheribia and Kyishia with his gun earlier in the encounter. A rational trier of fact could conclude that defendant possessed the requisite intent to murder while committing at least one of his multiple assaults against Sheribia and Kyishia. *McRunels*, *supra* at 181 (inferences and circumstantial evidence can prove an intent to kill). Moreover, had defendant killed Sheribia or Kyishia, the killings would have been murder. Accordingly, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find that the elements of assault with intent to murder regarding Sheribia and Kyishia were proven beyond a reasonable doubt.

Concerning defendant's third victim, Ruth McLean, the facts even more readily support a finding of assault with intent to commit murder. McLean testified

that defendant stood in front of her van, pointed his gun directly at her face and told her, "I'm going to kill you." Although defendant pulled the trigger and the gun made a clicking sound, it did not fire a bullet. Apparently intent on shooting McLean, defendant reloaded his gun and once again stated, "I mean it, I'm going to kill you." Defendant fired two shots in McLean's direction, both of which shattered McLean's windshield and one of which hit McLean in the face. On these facts, a rational trier of fact could find that defendant committed assault with intent to murder with respect to McLean.

*Bullitt*, No. 276426, slip op. at pp. 1-3.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis added). In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Here, the Michigan Court of Appeals found that petitioner's actions were sufficient evidence to establish that petitioner committed three assaults with intent to commit murder under Michigan law. The trial testimony established the following facts. During the early morning hours of September 4, 2006, petitioner kicked in the back door of the condominium occupied by Sheribia Rogers and her daughter Kyishia. Trial Trans. II at pp. 10-13 (docket no. 15). Petitioner made Sheribia lay on her stomach, handcuffed her, and told her "You know you're going to die tonight." *Id.* at p. 13. Her daughter came down the stairs and recognized petitioner, saying "Tyrice, why are

you doing this?" *Id.* at p. 15. Petitioner replied "You know my name? Who told you my name?" *Id.* at p. 16. Petitioner then said "Where the money at?" *Id.* at p. 17. When Sheribia said she had only $300.00, petitioner pointed the gun in her face. *Id.* Kyishia had more money upstairs, and they gave all of the money to petitioner. *Id.* at pp. 18-20.

Sheribia testified that after she and her daughter had given petitioner the money, and they were sitting on the sofa, petitioner told her daughter "I don't know if I'm going to kill you first or I'm going to kill your mother first," and then said "No, maybe I'll just kill you first, but you're all going to die tonight." Trial Trans. II at p. 20 (docket no. 15). When Kyishia said "Please don't shoot me," petitioner replied, "Oh I ain't going to shoot you, I'm going to stab you" and he pulled out a knife. *Id.* Petitioner told Kyishia to take off her clothes, and when she did not strip fast enough, petitioner stabbed the victims' television screen with the knife and then hit Kyishia in the head with the pistol. *Id.* at pp. 21-23. Then, when Kyishia asked to go to the bathroom, petitioner said "no," stating "I'm going to kill you all anyway and when people get killed, they shit and piss on theyself anyhow." *Id.* at p. 25. Shortly thereafter, Kyishia took off running. *Id.* at pp. 25-26. Petitioner hit Sheribia in the head with his handgun (knocking her down) and then started running after Kyishia. *Id.* Both Sheribia and Kyishia ran out of the condominium, being chased by petitioner. *Id.* at pp. 26-30. Sheribia briefly stopped by a van. *Id.* at pp. 30-32. Petitioner ran toward the van, pointed his handgun at the van and shot twice. *Id.* at pp. 30-32. Viewing this evidence in the light most favorable to the prosecutor, any rational trier of fact (in this case a judge) could have found the essential elements of the crime beyond a reasonable doubt with respect to Sheribia and Kyishia Rogers.

The third victim, Ruth Ann McLean, testified that she was driving a van that morning delivering newspapers in the condo area, that it was still dark out, and that she saw a naked woman who was handcuffed running down the road toward her. *Id.* at pp. 65-66. The woman asked for help because someone had broken into her house. *Id.* at pp. 67-68. Ms. McLean told the woman she was going to call the police and reached for her door lock and cellphone, but her fingers wouldn't work. *Id.* at pp. 68-69. The woman ran off, and McLean heard "I'm going to kill you." *Id.* at p. 69. She looked up and saw petitioner with a hand gun pointed right at her. *Id.* at pp. 69-70. The gun clicked but it did not go off, then petitioner backed up and said "I mean it, I'm going to kill you." *Id.* at p. 70. Ms. McLean backed up her van and hit a curb while petitioner loaded the gun and walked towards her. *Id.* at pp. 70-72. Ms. McLean was able to get away over a grassy area, but there were two shots in the windshield and she was struck in the face. *Id.* at p. 72. Her face was hot, there was blood dripping and her glasses were broken. *Id.* She then drove to get medical attention at a hospital, where her nose was stitched together. *Id.* at pp. 72-73. Viewing this evidence in the light most favorable to the prosecutor, any rational trier of fact (in this case a judge) could have found the essential elements of the crime beyond a reasonable doubt with respect to Ms. McLean. Indeed, it is hard to conceive how any rational fact-finder could have come to a different conclusion as to any of these crimes, under any standard.

The Michigan Court of Appeals' decision was neither contrary to, nor unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## B.    Sentencing guidelines departure  (Issues II, III and III.A)

Petitioner also seeks relief from the life sentences imposed on his three convictions for assault with intent to commit murder.  At the sentencing, the trial judge pointed out, and both the prosecutor and defense counsel agreed, that petitioner had "maxed out" on the guidelines, with a minimum sentence under the guidelines of 135 to 225 months (i.e., 11.25 years to 18.75 years). Sent. Trans. at p. 3 (docket no. 16).   At the sentencing, Kyishia Rogers stated that petitioner's actions affected her in many ways including nightmares, inability to sleep, recurring scary memories, that she is scared to be in her house and that her life would never be the same.  *Id.* at pp. 11-12.  She also stated that petitioner had a knife and a gun, stated that he was going to kill both her and her mother, intended to kill her and her mother and shot another lady.  *Id.*  Sheribia Rogers stated that petitioner told her that she was never going to leave her home, that she has not been able to work since that day, that her family was torn apart, that she is in fear, and living in her "own cell." *Id.* at p. 13.

While the prosecutor asked that petitioner serve "natural life" in prison, the trial judge rejected that notion:

> Well, first of all let's just get the law straight.  "Natural life" is an illegal sentence on a case like this.  "Natural life" means life without parole."

*Id.* at p. 16.  The trial judge then set forth his reasons for making an upward departure:

> I've been doing this almost four years and I also agree that I've never seen anything like this.
>
> As I said earlier, but for the grace of God, those two outstanding members of society would not be here.
>
> I don't know what happened that night.  I don't know what made you tick that night.

13

You know, in your statement that you made sir, you said that you just blacked out and you woke up and the police got you. I find that very hard to believe.

You had a lot of things that you said that night, a lot of actions that you did that were very calculated. You knew exactly what you were doing.

Why you did what you did that night, I have no idea, but you were a monster that night. You were going to have sex – rape those two; that young girl and that mother. You made them take their clothes off. You made the girl take her mom's clothes off and vice versa. They were naked.

You handcuffed the mother behind her back. You were going to have your way with them and then make it look like a white man did this.

The comments you made, I can't even imagine the terror that was going through these people's minds.

And then when the little girl asked if she could go to the bathroom, you said well it doesn't matter because - you said - "You're going to piss and shit on yourself anyway when you die, so it doesn't matter."

What kind of human being acts like that?

You had absolutely no remorse for them. You apologized to me for wasting my time; I get paid by the year, sir. This is my job. I do trials. You're not wasting my time. Without people like you, I wouldn't have a job. So you don't have to apologize to me.

There's no remorse. You're a cold, stone, ruthless, insensitive, sociopath and there are no redeeming qualities for you.

And the guidelines do not take into consideration all these things about you. But any appellate court can read the transcript and know that the guidelines just don't satisfy what needs to be done.

So given all that, I am going to make an upward departure, and I think the law provides for it. I think I've stated the reasons succinctly.

\*      \*      \*

I can assure you ladies, you're never going to see him again. He will never be released from prison. If he does, it will be a cold day in you - know - where.

14

*Id.* at pp. 16-19.

In Issue II, raised his direct appeal, petitioner contends that the trial court abused its discretion in deviating from the sentencing guidelines with respect to the three convictions for assault with intent to murder. In Issues III and III.A., raised in his post-appeal motion for relief from judgment, petitioner contends that the trial judge violated his Sixth Amendment rights and due process when it departed from the sentencing guidelines and enhanced the sentence by facts which were neither admitted by petitioner nor found by a jury. *See* Attachment (docket no. 5 at pp. 39-43).

## 1.    Judge's departure from sentencing guidelines

Petitioner fails to state a federal constitutional issue with respect to the trial judge's alleged abuse of discretion in departing from the guidelines. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The state's computation of petitioner's prison term involves a matter of state law that is not cognizable on federal habeas review. *See Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. *See also Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is issue of state law not cognizable in federal habeas review); *Braun v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures"). Petitioner is not entitled to federal habeas relief on this state law claim.

### 2.    Petitioner's *Blakely* and *Apprendi* claims

In Issues III and III.A., petitioner claims that the trial judge violated his rights under the Sixth Amendment and due process clause when the judge enhanced the sentence using facts not found by a jury raises a claim. *See generally*, *Blakely v. Washington*, 542 U.S. 965 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). As an initial matter, there was no jury involved in this case; petitioner waived his right to a jury trial. At sentencing, the trial judge, who was the trier of fact in this case, based the sentence on facts which arose during the trial. *See* Sent. Trans. at pp. 16-19. In this regard, the Michigan Court of Appeals found that the trial court did not commit any error in the upward departure:

> A review of the sentencing transcript suggests that the moving force underlying the departure was the trial judge's view that defendant's actions were exceptionally egregious. The trial judge recounted the facts of the case, including the fact that defendant forced Sheribia and Kyishia to undress, handcuffed Sheribia, appeared likely to rape Sheribia and Kyishia, and repeatedly told the two that he was going to kill them, using graphic language. We are satisfied that the trial court stated sufficient reasons to justify the departure.

*Bullitt*, No. 276426, slip op. at pp. 3-5.

Furthermore, the constitutional rights referred to in *Blakely* and *Apprendi* do not apply in this case. *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the

offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (citing *Apprendi*, 530 U.S. at 490).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The Sixth Circuit has determined that *Blakely* does not apply to Michigan's sentencing system, provided that the sentence does not exceed the statutory maximum. *See Montes v. Trombley*, 599 F.3d 490, 496-98 (6th Cir. 2010) (Michigan's indeterminate sentencing scheme did not violate the defendant's due process rights or right to a jury trial under *Blakely*); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely* and *Apprendi* because it does not apply to Michigan's indeterminate sentencing system, and stating that "*Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum"); *Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007) (*Blakely* does not apply to Michigan's indeterminate sentencing system).

Here, petitioner's was convicted of three counts of assault with intent to commit murder, M.C.L. § 750.83, which carries a maximum penalty of "imprisonment in a state prison for life or any number of years." The court sentenced petitioner to a prison term of life imprisonment for these three convictions, sentences which equaled, but did not exceed, the statutory maximum. Accordingly, neither *Blakely* nor *Apprendi* apply to petitioner's sentences.

### C.    Ineffective assistance of trial and appellate counsel (Issues IV and V)

Finally, petitioner contends that both his trial and appellate counsel were ineffective for failing to raise the due process arguments with respect to the upward departure. *See* Attachment

(docket no. 5 at pp. 44-48). In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original). Under *Strickland,* the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

In addition, appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern,

*Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.*

The strategic and tactical choices to determine which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990). To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). If there is a reasonable probability that petitioner would have prevailed on appeal had the claim been raised, then this court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

The gist of the ineffective assistance of trial counsel claim is that trial counsel did not object when the trial judge court considered the dismissed charge of attempted criminal sexual conduct when sentencing petitioner. *See* Attachment (docket no. 5 at pp. 46-47). As discussed, petitioner's appellate counsel addressed the upward departure on appeal and the Michigan Court of Appeals found no error in the sentence after reviewing the sentencing transcript (which included both the trial judge's the reference to rape and rejection of the prosecutor's request for a sentence of "natural life"). *See Bullitt*, No. 276426, slip op. at pp. 3-5. In addition, as discussed in § III.B.2., *supra*, petitioner had no federal due process claim with respect to the alleged error related to the sentencing guidelines. Neither petitioner's trial counsel nor his appellate counsel were ineffective for failing to raise these meritless sentencing issues. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless

argument"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court"). Accordingly, petitioner's claims of ineffective assistance of trial counsel and appellate counsel should be denied.

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: August 19, 2013        /s/ Hugh W. Brenneman, Jr.
                                      Hugh W. Brenneman, Jr.
                                      U.S. Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).